The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Craig H. D. Armon presiding. Good afternoon, counsel. We'll call our next case, which is 4-22-0208, City of Rock Falls v. Aims Industrial Services, LLC. Could counsel for the appellant please state your name for the record? Matt Cole. Thank you. And counsel for the appellee, could you please state your name for the record? James Murtis. All right, thank you. Mr. Cole, you may proceed. Thank you, your honors, and good afternoon. My name is Matt Cole and I represent the petitioner appellant in this case, the City of Rock Falls. This case does involve an appeal from the circuit court's denial of the city's petition for injunctive and other relief relating to a series of ordinances that the city's adopted, which would essentially require the respondent in this case to connect to the city's sewer system. Your honors, if I may, I'd like to reserve two minutes for rebuttal at the end of arguments today. I'll start by arguing three primary issues that the city would like the court to focus today, your honors. First is whether the circuit court actually erred by failing to apply the facts of case to the law at issue and actually making a specific finding that the city had satisfied all the elements that would be needed to prove a violation of the ordinance. Second, if that is the case, then whether the circuit court erred by weighing the equities and doing so in favor of the respondent. And lastly, your honors, whether the circuit court erred by substituting its judgment for the legislative action of the city council. Your honors, I would like to start with the there has been some debate as to the standard of review that would apply in this case. As you're likely aware, in denying the city's petition, the circuit court actually issued an extensive oral pronouncement of its findings and rulings. The order from which the city appeals is essentially an incorporation of the entire 23-page transcript from the circuit court's pronouncement. Within that transcript, there are a lot of factual findings. There's a lot of questions of law that were addressed by the circuit court. In this instance, the city would request and takes the position that the appellate court should adopt a bifurcated standard of review, one that would apply the manifest weight of the evidence standard for any questions of facts that the judge decided, and one that would apply a de novo review for questions of law. Alternatively, your honor, if that is not the case, then this certainly is a case that involves a mixed question of fact and law, and we would suggest that the clearly erroneous standard apply. Counsel, in regards to the standard of review, I just want to make sure I read the court's oral ruling, and it was several days ago, and I can't recall. Did the court specifically deny the petition for injunctive relief, finding that the ordinance had not been violated, or did it reach the issue of, or specifically rule on the issue of whether the ordinance had been violated? It did not, your honor, and that is the crux of the first issue here that the city is arguing. Essentially, what had happened at the trial court level was a general denial of the city's petition. Part of that involved certain findings of fact, part of that involved the question as to the weighing of equities that we're also going to be addressing, but there was no specific finding by the circuit court as to whether those elements had in fact been satisfied before moving on to a review of whether or not the equities should, notwithstanding a violation, should reject the city's petition of this case, so it was not specifically ruled on, your honor. Okay, thank you, and then just one other question. What was the trial court's, what was petitioner's burden of proof in the trial court? What was the burden in to establishing a violation? Well, your honor, essentially the city did have the burden. There was some debate at the trial level, what form or what standard would be applied. Ultimately here, your honor, the city certainly carries the burden as to showing all of the elements that are going to be addressed here. Now, there was argument about whether, because this is a quasi-criminal case and what sort of standard should be applied, it certainly is not a preponderance of the evidence, but it is something less than beyond a reasonable doubt. I think everyone agreed that it's maybe a slightly higher burden for preponderance of the evidence. That's ultimately what the circuit court decided, and we don't object to that standard. To be clear, what standard are you not objecting to? But in this court, we need to be clear about what you're asserting the standard, what the burden of proof was that you had, because we don't get to the injunctive relief claim unless you've established a violation. Yeah, I apologize, your honor. I'll try to be more clear here. Essentially, it is something that is a preponderance of the evidence with, I mean, in the best way that I can describe it from the judge's perspective was slightly higher than a preponderance of the standard or preponderance of the evidence. So again, that's my understanding. That's my recollection. I may be misstating the ruling from the circuit court here, your honors, but that is my recollection. Thank you. Following up on that, Mr. Cole, the trial court did, though, find that section 32-190 had been met in the case, right? It found that there was, that it was within 300 feet that the particular flow rate, so there was a finding on that sub part of the issue. Is that my understanding that right? That is correct, your honor. Okay. And that kind of leads me into the next points, your honors, if I may. Essentially, the best way to frame the elements that are at play here, because there are a combination of sections that cross-reference each other within the city code. So I have attempted to try to summarize it for ease and convenience purposes. Really, the elements that apply here, your honors, is demonstrating that the respondent in this case purchased the property. At the time that it was purchased, it was serviced by a private disposal system. The sewer mains would have to be adjacent to the property and at its most stringent within 300 feet of the property line. And then the final factor is, your honor, is whether or not that respondent would have received written permission from the city council to continue to use that private sewage disposal system. So while some of the elements were specifically referenced to, you're correct, your honor, that there was a specific finding of fact that the property was within 300 feet. It was adjacent to the property line. All the other facts are relatively uncontested. We know that the respondent purchased the property here. We know that the property is adjacent to the city's sewer mains. That was a determination that the trial court made. And we know that they weren't and neglect to connect to the city's sewer main. I don't know that you'd agree that this is a separate element, but the provision in section 32-189G, that's the provision that says, upon sale or transfer of property, all private sewage disposal systems within city limits shall connect to the public sanitary sewer when available. And I'm highlighting the words, when available. Did the petitioner have to establish the availability of the public sewer as an element? That's correct, your honor. What I would state, and simply as just a means of clarifying, is if you continue to read through that section, it does state that the city's burdens just to show that a connection is available, but it's available in accordance with two separate provisions. And that's specifically the ones that we just related to, that section 189G, which discusses whether or not the sewer mains are adjacent to the property, which had been established. 32-186. My apologies, your honor, 32S-186. But essentially, what they are cross references to those sections, and two of them, again, are referenced there. One of them relates to whether it's adjacent to the property. The other is with respect to the sewage flow and the distance of the city's sewer main from the property line. And I'll have questions for you here at a later point when we get to proof of the elements. But that term, available, the trial court in its comments, I think it used the word available in the same sentence as cost analysis. And so I think that potentially may be relevant, but I'll let you get on with your argument and ask you at a later point. Absolutely, your honor. To summarize kind of this first issue, your honors, the city does take position that after a thorough review of the record here from the court's oral pronouncement, all of those elements of an ordinance violation do exist. The error is simply the fact that the circuit court did not specifically apply those facts to the law at issue, which would be the ordinance that is in dispute today, and determine whether or not the city had carried its burden. To my second point, your honor, you know, again, assuming an ordinance violation was demonstrated here by the city, it's very clear from case law that once an ordinance violation has been established, the circuit court should not be weighing the equities to determine whether to grant an injunction. Specifically, your honor, the city has cited to relevant Supreme Court case law, one of them being referenced as SADAT versus American Motors Corp, which essentially holds that when a statute expressly authorizes injunctive relief, once it has been established that an ordinance violation exists, the circuit court has no discretion, essentially no authority to deny that relief. Now, in this instance, section 1-41N of the city code is that provision, which does provide expressly for injunctive relief to abate the type of ordinance violation that's issued here. So, from the city's perspective, your honors, it seems very clear from a legal and case law standpoint that once an ordinance violation has been established, meaning all those elements of the ordinance have been demonstrated by the city, the circuit court doesn't have authority to weigh the equities. It should not be considering whether or not it is fair. It should not be considering whether or not there's some other purpose that would override the city's strong public health and safety concerns in terms of adopting this ordinance and making people connect to our public sewer mains. Does it matter, counsel, that 1-41N was sort of a general provision in the code and that 32-189 didn't contain its own injunctive provision until after the events in question? I don't think it does, your honor. In fact, if you do review the Sadat case and some of its progeny, there are numerous references that are extraordinarily similar to the provisions that the city of Rock Falls has in this case. While it doesn't exist in a convenient factor in terms of right in that section, it still does apply. It's still adopted within the city code. And again, the fact that it specifically refers to injunctive relief is sufficient. I don't know if you've gotten now to the point where you're going to be talking about whether or not the trial court should have balanced the equities. Are you to that point? Yeah, absolutely, your honor. I'm certainly welcome to move on to that aspect. Well, before you do, that presupposes a violation was established. And I really do have a question about whether or not, A, the court made that finding, which we've already talked about, or B, whether or not the evidence was supportive of a violation here. And I want to go back to that code provision 189 G that says, upon sale or transfer of property, all private sewage disposal systems within the city limits shall connect to the public sanitary sewer when available. In the court's comments, it was talking about the city's prior exemption of the gun club from the connection requirements. And it was commenting on how the city had taken into account the costs that had been tendered, how much it would have cost for the gun club to connect. And in its comments, the court said, and I do find that at some point in time, because the city has already made their own determination as to how they are defining the word available, that they will do a cost analysis. Now, I am assuming you would disagree that that is what the the city did, that they made an examination of whether or not a public sanitary sewer is available in light of the cost associated with connecting with it. Am I correct there that you would disagree with that? Yes, Your Honor. And I'd like to expand on that unless you have additional comments. I have a follow up question, but why don't you go ahead and address it? Yeah, I think really that the answer is simple, right? So from the city's gun range case that did look at factors such a cost. But again, that interpretation does not mean that they're amending the statute or the ordinance that's at play here at all. In fact, in this case, we have a very specific definition of what availability is. It wasn't generically referred to in the city code. It said available within the meaning of those other two sections that have been referenced. So again, I think because of the specificity there, you know, if the city's intent was to alter their consideration as to what availability would be, Your Honor, then they would do so by adopting an ordinance and amending that section. So if no matter the cost, if it's within 300 feet, if the sewer main is within 300 feet of residents or an industrial property that has less than blank volume of sewage, then the property owner has to connect. That's what available then means according to the ordinance in your view, right? That's correct, Your Honor. Okay. So in that gun club a situation, the gun club would have had to have done boring under a street, First Avenue, I guess. They considered that and they considered the cost involved with it. So there it was feasible. But even there, you would say feasibility doesn't come into it. I think I read in your brief that feasibility isn't a consideration that is not pertinent to the issue of whether or not the sewer connection is available. Is that right? That's correct, Your Honor, there is no reference to feasibility or cost. Doesn't that seem like an absurd a result in somebody buys property? It's across the Rock River from a sewer main within 300 feet. And what the property owner is going to have to go under the river to attach to that main? Well, Your Honor, I think you're hitting an issue that I'd certainly love to expand on an awful lot. And basically, there's two ways that that can be dealt with. One would involve requesting a waiver from the city council. Certainly, there are circumstances where the city council and its discretion can allow a property owner to continue to utilize a private sanitary system. It's not didn't aims try to do that before trial and they were denied. So you're correct, Your Honor aims did attempt to request a waiver, it would have been the week of trial. At that point, this litigation had been ongoing for two years. And ultimately, the city council and its discretion decided not to grant the waiver in that instance, which kind of turns me to the next points, Your Honor. Ultimately, when we're talking about the requirements of ordinance here, I don't think it's it is being attacked in terms of its validity. I don't I certainly know that the circuit court did not find that. Now, that being said, there is a trigger mechanism here that would require the connection to be made. This is not a general ordinance that essentially says if we extend out to you, you have to connect. And instead, it actually specifies very specific circumstances that would require a connection. And one of them involves the sale or transfer of property, which certainly from a fairness standpoint makes the most sense. If you were a prospective purchaser within the city of Rock Falls, and we're looking at purchasing industrial property within the city, it would certainly make sense at that point for you to it is adjacent to the property. So again, Your Honors, I do tend to stray away from the consideration of equities here, because that's the very reason why it shouldn't apply here, right? Ultimately, it's clear from a case law standpoint that when we're dealing with an ordinance that is specific, and Your Honors, I apologize, I do see that I'm out of time. I would like to finish. Thank you very much. But when we're dealing with an ordinance that is specifically tailored to combat things like public health and safety, and obviously the concern here would be to make sure that there is a efficient and safe way to dispose of human excrement, then certainly that overrides any other concerns that a private party would have. And that's what the case law is based off of, Your Honors. So with that, I just simply like to state, Your Honors, for the reasons I did discuss, the city does respectfully request that the court reverse the decision of the Circuit Court and enter judgment in favor of the city. Thank you. Thank you, Mr. Cole. You'll have an opportunity on rebuttal. Mr. Mertz. Good afternoon, and may it please the Court and Council. My name is James Mertz, and I represent the FLE, Ames Industrial. The trial court's decision should be affirmed for a violation of the applicable ordinance, seeing upon that language cited by Your Honor Justice Harris, that availability, and I'll come back to that. Second, the trial court's balancing of the hardships was both proper and necessary, and certainly not against the manifest weight of the evidence. Third, the trial court properly considered that the city had selectively and improperly selectively enforced the sewer connection ordinance. And fourth, the trial court did not trespass upon the city's legislative authority. Rather, it simply held the city to stand and set for itself. At the outset of his comments, Mr. Cole addressed the disparity between the city's position and Ames' position with respect to the standard of review. The applicable standard of review is manifest weight of the evidence. Since the city is challenging the based on factual determinations. Well, the city is saying that the trial court utilized the wrong legal standard, that the trial court took into account balancing of the equities when legally that wasn't appropriate. So wouldn't that be de novo? No, Your Honor, and thank you, because that allows me to amplify the point that I think was being discussed during Mr. Cole's argument. Ultimately, the trial court found that there was not a violation. The court found that a direct sewer connection was not available to Ames. Absent a finding of a violation, even if this court were to find, and I will argue momentarily that it should not, even if this court were to find that the ordinance were specific and not general, it was general. You said that the trial court found that there was not a violation, that the sewer was not available. Can you identify the page of the report of proceedings where the trial court said that? Very specifically, Your Honor, at page 147 of the report of proceedings, there was a comment made by His Honor in his findings. His Honor, Judge Steinis stated as follows, quote, and this is again at page 147 of the report of proceedings, Ames did not create the circumstances that he finds himself in necessarily, and the city helped create it by not making those laterals readily available. At that juncture, Your Honor, Judge Steinis was referring to the absence of lateral connections which would render the sewer connection available to Ames. Using the word available, Judge Steinis found that the connection was not available to Ames. In absence of finding of availability, no ordinance violation was ever proven. But that, Mr. Mertes, that would mean that every landowner who's going to connect to the city's system has to be provided a lateral by the city. And the evidence below was, this is born by the developer, this is born by the landowner, the cost of creating the lateral. That's simply what goes from your property to theirs. His Honor, Judge Steinis found based upon the evidence that was presented at trial, Your Honor, that the city bore greater responsibility than that which it accepted for itself and that which the question connotes. I don't know what that means. Those aren't legal terms to me. I don't know. In the preceding sentence to the sentence that I read on page 147 of the record, this is also on page 147 of the report of proceedings, Judge Steinis said, I think of that, in other words, the lateral connection requirement, as either the city's responsibility or the city's responsibility to cooperate with the property owner to get it done. Where's the evidence in the record that there was some missing cooperation to get it done? The testimony of Mr. Ed Cox, who was the city's street and sanitation director, actually was that lateral connections were not put in for this property, even though they were installed by the city for other properties. So the absence of lateral connections was of significant import. It wasn't the only basis upon which Judge Steinis decided the case, but it wasn't. I think he said it was done by at the landowner's expense for the other properties. That doesn't sound like the city's lack of cooperation. I think what Mr. Cox testified to, Your Honor, was that when the sewer main was installed, laterals were installed at that time. For the Ames property, it was not- By the property owner. I mean, you're trying to push the burden now for the whole system onto the city to install the laterals. That's a big jump. There's a big consequence for that. The burden is on the city to prove that the main is available to the property owner. And the statute, the ordinance tells us availability is per 32-186, which means it must be adjacent. That's what you admitted was satisfied below. The second thing is 32-190, 300 feet, particular flow rate. Trial court found that's there. With those two findings, and that being the definition in the statute, how is there a dispute about whether it's available? Yes, Your Honor. I agree that also on page 147 of the record, actually page 136-137 of the record, Judge Steinis found that the wastewater treatment system was located within 300 feet, and it had a daily sewage flow of less than 1,500 gallons per day. I acknowledge that Judge Steinis made that finding. However, respectfully, Judge Steinis' finding was that the parameters of section 190 were found to exist. He did not find availability, and he keyed his finding of lack of availability on a couple of different points. One was the absence of laterals. Two was the cost-prohibitive nature of the connection, which is- Nothing in the ordinance that says availability depends on the city providing laterals. Nor does it say that it does not. It uses the word availability. It says when available in accordance with sections 186 and 190, a direct connection- Which we know has been satisfied. There's no dispute about that. I don't know, however, Your Honor, if I may, I would respectfully ask the court to consider the testimony of Mr. Simonton, another witness that was called by the city. Mr. Simonton testified that the way in which the city proposed the connection occur would be unusual and in a manner that had never been done before. The reason he testified that the city's request for the estimate of the $50,000 estimate was an unusual way was because a direct connection was not available. So it wasn't just- I don't think he said it wasn't available. I think, wasn't this an effort to find a cheaper way to do it for the benefit of Ames? Well, the city wasn't attempting to find a cheaper way to do it for the benefit of Ames. I think the city was concerned about the balancing of the hardships and attempting to deflate the estimate that was provided by Mr. Simonton of over $150,000 in expense to Ames on a $240,000 purchase of property. So what Mr. Simonton was testifying to was that a direct connection was not possible absent these additional steps that would have to be taken in order for the connection to occur. The city was attempting an indirect connection, which was contrary to the way in which it's ever done. Right. So if they're wrong about that, then we're back to the $157,000, right? Because there was a connection available done that way. So it puts us squarely into the question of whether the court can consider the cost just because the city council did on another case. And the answer to that is yes, for multiple reasons. First, respectfully, my argument that the court found that there was a lack of availability of a direct connection. Second, the court's balancing of the hardships. Now, I want to address that directly. The city has argued for the first time on appeal that the trial court should not have balanced the hardships. This court should not overlook the fact that this is the first time that argument's been made by the city. The city weighed that argument at the trial court level. You won't find anything in the record where the city is arguing that the trial court is prohibited from balancing the hardships because of some direct requirement of injunctive relief upon proof of a purported violation. So the issue has been weighed. Secondly, in Sadat, a case on which the city partially relies, our state Supreme Court held that a statute's general grant of equitable relief does not evince a legislative intention to dispense with equitable pleading requirements. Justice Dougherty, in one of your questions of my opponent, you asked the question about 141N in contrast to section 149, which was passed after the property was purchased. 141N was indeed a general provision. There was no specific provision, and therefore Rosenwinkel and Sadat instruct that balancing of the hardships is appropriate. In fact, in Rosenwinkel, the court, unlike here, was dealing with a statute that expressly authorized the government to seek injunctive relief. The second district nevertheless reversed and remanded where the record did not reflect that the trial court had balanced the hardships. Well, what they said was that there was a laches issue. I think on the balancing the I think, Justice Dougherty, Your Honor may be referring to the Midland decision, which was kind of an interesting decision itself. That was a second district decision in 1993. Kind of interesting. In Midland, that was a case where the Department of Water Resources requested inductive relief, and the court held that an injunction as to a lift station was warranted as general equitable principles did not apply. But then the court applied the doctrine of laches, which I Now, it may be an equitable principle of a different sort. I acknowledge it's different than balancing the hardship, but they applied an equitable principle, even in that instance. Now, going back... Go ahead, Justice Harris. No, if you're following up on the last point, go ahead. Just on the waiver, with respect to waiver and the city's refusal of it, isn't the remedy there to have judicial review of that decision, as is available of a kind of a quasi-judicial decision of that nature? Why would we be looking at that decision in this case, as opposed to you taking a separate appeal from whether waiver should have been granted? I'm sorry. My argument of waiver is that the city did not argue... No, I get it. I'm going to the issue that the city council granted the gun club a waiver, and they didn't... And here, you want to use that in this case to say, therefore, the statute allows consideration of these equitable principles. My question to you is, isn't that something to appeal in the denial of Ames' request for waiver, and the whole question of whether it was sort of selectively granted? No, I think that ultimately, the issue of the city's enactment of a specific ordinance allowing the gun club to avoid the cost prohibitive expense of $36,000, while not enacting an ordinance that allows Ames to avoid $154,000 in expenses, is an issue of selective enforcement. Right, but isn't the remedy an appeal from that decision of judicial review of that decision? No, Your Honor, and the reason for my answer in the negative is because it's the city's burden. In this case, it's the city that is seeking to enforce an ordinance with respect to Ames that the city did not seek to enforce with respect to the gun club. So the burden does not fall upon the respondent in the petition for injunctive relief action. The burden remains upon the city that undertook that burden. And parenthetically, I should observe that the burden of proof, and this was in response to a question that Justice Harris asked of my opponent early on, the burden of proof in this case was clear preponderance of the evidence. Now, I've pondered to some extent, is that in contrast to an unclear preponderance of the evidence? But ultimately, His Honor, Judge Stein is correctly noted that a clear preponderance of the evidence connotes a burden of proof that is higher than mere preponderance, but perhaps not rising to the level of clear and convincing. In support of that proposition, by the way, I cite the third district case of City of Peoria versus Hine, which established that the burden of proof in this type of case is clear preponderance of the evidence. Now, counsel, if you finish responding to that question, I have another question regarding this concept of availability. The trial court, at least in certain comments, tended to make equivalent something that was cost effective and available. How is trial court, if we follow your suggestion here that the trial court as an element of the petition, the element of the cause of action, that being the ordinance violation, has to establish that the sewer was available? From a cost standpoint, at what point does it become unavailable? I don't understand where the point is on that continuum of cost where you can say, okay, here for a gravity feed system, it was $150,000. The cost of the property was $245,000. We're going to say that was so cost prohibitive that that means the sewer system was not available. What about $25,000? What about $5,000? How is a trial court supposed to judge that element? What would we do? What should we do here on appeal to determine whether or not a finding of availability was an error? Thank you, Your Honor. If the court accepts the proposition that this finding was a finding of fact, then the court should apply the standard review, which is whether or not Judge Steinis' ruling was contrary to the manifest weight of the evidence. If, alternatively, this court finds that this determination by Judge Steinis was a combination of a question of law and a question of fact, then the court should apply the clearly erroneous standard. That's the easy one. Go to the trial court. What's the trial court supposed to use as a benchmark? Where's the dividing point between available and unavailable? Justice Harris, the city made it a little easier for Judge Steinis in this case. The city said that the cost of $36,000 for the gun range was cost prohibitive. It didn't require too much difficulty on the part of Judge Steinis when balancing the equities to determine that a cost of over $150,000 was what rendered the connection unavailable on a cost determination basis using the standard. Mr. Curtis, we have very little information to allow us to compare the situations. We don't know how many months per year that they're being used. We don't know what the normal usage is. We don't know profit versus non-profit. We don't know a lot of things. There's almost no record of why the city did what it did with the gun club. That goes back to my question. Why would this the case where we would be comparing two waivers when neither one of them is part of this case? His Honor, Judge Steinis found that he did have adequate information to perform a comparative analysis of the city's determination that $36,000 was too expensive but over $150,000 was not. What if we didn't have the gun club case in this? Just going back to my question about this case and any future case, a trial court's being asked to determine whether there's been a violation of the ordinance. You're representing the property owner. You say it's too expensive. That means it's unavailable. Well, what's too expensive? How does the trial judge make that call? Where's the point in that continuum? Thank you, Your Honor. Judge Steinis made a number of findings that answer that question. First, of course, he compared with the gun club, but I want to accept the limitation of your question, which is forget the gun club. Accepting that limitation, Your Honor, Judge Steinis also compared the cost of $50,000 to $150,000 plus to the price of the property, which was $245,000. He also considered the fact that the lateral connections did not exist. Now, I've answered several questions from Your Honor, Justice Dougherty with respect to that issue, but I come back to that. Judge Steinis looked at all those factors in determining that it was inequitable to enforce this. Ultimately, giving deference to the trial court on those issues, whether you apply a manifest weight standard or a clearly erroneous standard, Judge Steinis felt that he did have adequate information in order to make that assessment. So whether you can trust the gun club or whether you accept the limitation of forget the gun club, the cost of $150,000 plus and the property was purchased for $245,000 was too much. Also, let's not forget the other point that Judge Steinis made, and that is that the triggering event was the sale of property. The triggering event was not the occurrence of some risk to the public consequential to a failure on the part of the property septic system. Rather, Judge Steinis observed that when the trigger event was a sale of property, that triggering event wasn't tied to, he actually used the expression rationally related to any occurrence of risk to public safety. I see that I'm out of time. Without further questions, I would respectfully request that this court affirm the trial court's ruling. Thank you. Thank you, Mr. Murtis. Mr. Kroll, rebuttal. Thank you, your honors. I do have three points to make with respect to opposing counsel's determination of lack of availability due to lateral laterals. I believe the specific language was that the circuit court found that they were not readily available. That is certainly a different term than what is used in the ordinance. Again, we're not dealing with a general definition of availability. It is specifically defined. It's a defined term in the ordinance. I think there's no dispute that lateral does not exist within the scope of that definition. Second, your honor, I would like to address also the issue of cost. Again, cost has certainly come up time and again throughout the course of this litigation. The first point being, the court authority here is simply that cost doesn't come into play when there is an ordinance that is specifically enacted to address a public health and safety concern. It provides injunctive relief. Cost doesn't matter. Part of it is because of the slippery slope that your honors discussed. How does a trial court make that determination? Where does the line go? Well, I would argue to the judges today that that determination isn't something to be made by the courts. It's a determination that's to be made by the city council, which is in fact the reason why this case is on appeal. The city council did make its determination. In a very specific situation regarding a waiver to this gun club, it declined to extend the same waiver to Ames in this case. Now, there is no evidence anywhere within the record about the financial capabilities of either party and whether or not truly the cost of $50,000 is unfair in one circumstance and $36,000 in another. Again, that is why this is a legislative decision that is to their ordinance, not something that the circuit court should be entertaining. Do you agree that that waiver decision is judicially reviewable? And number two, there's nothing that would prohibit Ames from seeking a waiver again and maybe making a better record. Your honor, I do think there is the potential for judicial review of the city council's determination. I do think it would be on a different standard than what is brought today, but certainly that is a possibility. Yeah, I won't disagree with you, your honor. That is certainly something that could be subject to judicial review just based upon a different standard, a much more stringent standard. And it's not too late for them to reapply. I wouldn't comment to that, your honor. I would not know the specific time frames in terms of there is sufficient time. I'm certain that if that is an avenue that they would like to pursue, an opposing council could do so. Finally, your honors, I just do want to address one final point here, the triggering event. And again, this is why these ordinances are important. Again, this is not a general ordinance that requires any property as soon as the city extends their sewer mains to make a connection. That triggering event is based upon a specific circumstance, one involving sale. And again, based on the purchase price. And that was argued by opposing council here that the circuit court reviewed the sales price of the property in connection with the cost or the potential cost of connection as to why it would be inequitable in this circumstance to require connection. But that completely disregards all the unknowns that could have taken place. And all of them are squarely within the respondents capability of addressing. Certainly it could have been something that in the course of respondents due diligence, he could have ascertained as to the cost of connection and negotiated that within the purchase price. And perhaps that was, but that's not the city's burden to prove in this case. The city's burden is simply to prove whether or not a connection exists and it's available within the meaning of the code. And that is the case. Second, your honor, in addition to that, your honors, we also run the problem of how do we start to compare this with other property owners that'll have to connect. And ultimately that is one of the primary reasons why this case is on appeal. Certainly there are going to be additional properties within the city of Rock Falls that will need to connect to the city's sewer mains. If the circuit court's ruling were to stand, essentially the analysis would be whether or not this particular property owner could show that the cost of connection would be $36,000 or more. I think that's improper. I do see I'm out of time, your honors. So with that, I just would like to finish by saying that the city would respectfully ask that this court reverse the decision of the circuit court, enter judgment in favor of the city. Thank you, your honors. Thank you, counsel. The court will take this matter under advisement. The court stands in recess.